IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHASE GOODNIGHT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. CIV-11-691-D |
| ) | |
| JOSEPH K. LESTER, in his official capacity, ) | |
| as Sheriff of Cleveland County, Oklahoma, ) | |
| *et al*., ) | |
| ) | |
| Defendants. ) | |

## **ORDER**

Before the Court is Defendant Joseph K. Lester's Motion to Dismiss Plaintiff's Second Amended Complaint [Doc. No. 37], filed pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff has timely opposed the Motion, which is fully briefed and at issue.[1]

Plaintiff brings suit under 42 U.S.C. § 1983 and state law to recover damages for injuries allegedly sustained during his arrest on the campus of the University of Oklahoma and his detention in the county jail. As pertinent here, Plaintiff alleges he was denied treatment for a serious medical condition that was known to, but ignored by, jail employees. Plaintiff thus claims a violation of his right as a pretrial detainee to constitutionally adequate medical care. Plaintiff has sued Defendant Lester only in his official capacity as Sheriff of Cleveland County, Oklahoma. Sheriff Lester asserts, and Plaintiff admits, that an official-capacity suit is generally "another way of pleading an action against an entity of which an officer is an agent. As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *accord*

---

[1] Other defendants have also filed motions for dismissal, which will be addressed by separate orders.

*Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 544 (1986); *see also Hinton v. City of Elwood*, 997 F.2d 774, 783 (10th Cir. 1993); *Watson v. City of Kansas City*, 857 F.2d 690, 695 (10th Cir. 1988) ("A suit against a municipality and a suit against a municipal official acting in his or her official capacity are the same."). Accordingly, the Second Amended Complaint may assert a claim against Sheriff Lester only if it sufficiently states a § 1983 claim of county liability. The premise of Sheriff Lester's Motion is that Plaintiff's factual allegations are insufficient to state such a claim.

### Standard of Decision

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see Robbins v. Oklahoma*, 519 F. 3d 1242, 1247 (10th Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. The question to be decided is "whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007) (internal quotation omitted).

### Plaintiff's Allegations[2]

The Second Amended Complaint states that Plaintiff was arrested in the early morning hours of January 23, 2010, while walking to dormitory housing on campus. Two officers employed by the Oklahoma University Police Department (OUPD), who are individually named in the pleading, arrested Plaintiff for public intoxication and placed him in a patrol car. When putting Plaintiff into

---

[2] Pursuant to the standard of decision, the factual allegations of Plaintiff's pleading are accepted as true and stated in the light most favorable to him.

the vehicle, one of the officers allegedly slammed the car door against Plaintiff's left leg and physically injured it. Before this happened, Plaintiff had informed the police officers of a serious medical condition, hemophilia.[3] Despite their knowledge of Plaintiff's leg injury and his hemophilia, "which would require immediate medical attention, the OUPD officers ignored Plaintiff's condition and proceeded to the Cleveland County jail." *See* Second Am. Compl. [Doc. No. 20], ¶ 18.

At the jail, Plaintiff allegedly informed "the jail staff" – that is, deputies or jailers who are individually named in the Second Amended Complaint – that he had been injured, he suffered from hemophilia, and he needed medical attention. *See id*. ¶ 19. However, the jail staff ignored this information, took from Plaintiff a medical alert identification tag that informed them of his hemophilia, and told Plaintiff "there was nothing they (jail staff) could do for him." *Id*. ¶ 20. During the booking process and during his confinement, Plaintiff's "left leg began to swell noticeably, which caused significant pain as well as difficulty in walking." *Id*. ¶ 22. Plaintiff was held in custody without any medical attention for approximately 13 hours before being released on bail. During this time period, "the condition of his left leg worsened visibly, and walking became extremely painful." *Id*. ¶ 23. Plaintiff alleges that he repeatedly informed jail personnel of his condition, but no medical attention was provided while he was in custody.

Because of his injury and lack of medical treatment, Plaintiff alleges he required treatment during the days following his release that involved having "medication specially delivered to him," and he "experienced extreme difficulty in walking for several weeks." *Id*. ¶¶ 25-26. Plaintiff also

---

[3] Hemophilia "is a rare bleeding disorder in which the blood doesn't clot normally. If you have hemophilia, you may bleed for a longer time than others after an injury. You may also bleed inside you body (internally), especially in your knees, ankles, and elbows. This bleeding can damage your organs and tissues and may be life threatening." *See* http:/www.nhlbi.nih.gov/health/health-topics/topics/hemophilia.

alleges that the "medical treatments and special medication necessitated by the acts and omissions of the OUPD officers and Cleveland County jail staff . . . put Plaintiff to significant and avoidable pain, inconvenience and cost, and threatened Plaintiff's health." *Id.* ¶ 27. As stated above, Plaintiff asserts that his Fourteenth Amendment right to receive treatment of a serious medical condition while confined as a pretrial detainee was violated. He seeks damages under § 1983 from Sheriff Lester (or the county), the two OUPD officers individually, and eleven individuals employed as deputies or jailers by the Cleveland County Sheriff's Office.

Plaintiff does not allege any personal involvement by Sheriff Lester in events at the jail. Plaintiff's allegations regarding Sheriff Lester's liability for the conduct of jail staff, as stated in the "First Cause of Action" of the Second Amended Complaint, are: that the sheriff had a statutorily-imposed duty to manage and supervise jail operations and to provide care for prisoners, including required medical care; that he was an elected county official with final policymaking authority; and that he is statutorily liable for the acts of deputies and jailers, whom he had the responsibility to hire, train, supervise, and discipline. In a "Second Cause of Action," Plaintiff also alleges that the failure of jail staff to recognize the need to provide medical attention to Plaintiff for his injury, despite knowing of his medical condition, demonstrates a failure of Sheriff Lester to train the jail staff, "which evinced a deliberate indifference to Plaintiff's rights." *Id.* ¶ 55. Finally, Plaintiff alleges that Sheriff Lester's acts or omissions in failing to train jail staff "were the proximate or legal cause of Plaintiff's damages," as alleged in the First Cause of Action.

## Discussion

Sheriff Lester contends the Second Amended Complaint fails to state a § 1983 claim against him because it fails to allege conduct by jail staff that would amount to a constitutional violation or to allege any basis for imposition of liability against the county. Regarding county liability, Sheriff

Lester notes that Plaintiff does not allege in his First Cause of Action that the alleged constitutional violation was caused by an official policy or decision regarding medical care for jail inmates. Sheriff Lester argues that Plaintiff's Second Cause of Action is similarly deficient and contains only conclusory allegations regarding a deficiency in training. Accordingly, Sheriff Lester asserts that the Second Amended Complaint does not adequately identify the factual basis of a § 1983 claim against him.

**A.      Constitutional Violation**

The law is clear that a pretrial detainee is entitled under the Due Process Clause of the Fourteenth Amendment "to the degree of protection against denial of medical attention which applies to convicted inmates under the Eighth Amendment." *See Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). To establish a constitutional violation under this standard, a plaintiff must show "deliberate indifference to serious medical needs." *Id.* (internal quotation omitted); *see Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "'Deliberate indifference involves both an objective and a subjective component.'" *Johnson v. Mullin*, 422 F.3d 1184, 1187 (10th Cir. 2005) (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000).

"The objective component of the test is met if the 'harm suffered rises to a level "sufficiently serious" to be cognizable under the Cruel and Unusual Punishment Clause' of the Eighth Amendment.'" *Martinez*, 563 F.3d at 1088 (quoting *Mata v. Saiz*, 427 F.3d 745, 752-53 (10th Cir. 2005)). "[I]t is the harm claimed by the prisoner that must be sufficiently serious to satisfy the objective component, and not solely 'the symptoms presented at the time the prison employee has contact with the prisoner.'" *Id.* (quoting *Mata*, 427 F.3d at 753). "A medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."

*Sealock*, 218 F.3d at 1209 (internal quotation omitted); *see Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010). Upon consideration of Plaintiff's pleading in this case, the Court finds sufficient allegations to suggest that a serious medical need existed during Plaintiff's confinement in the Cleveland County jail. The Second Amended Complaint states that Plaintiff had a diagnosed medical condition, hemophilia, and a leg injury that caused swelling, significant pain, and difficulty in walking, and required medical treatment after he was released. Under these alleged circumstances, Plaintiff might be found to have suffered a sufficiently serious harm to satisfy the objective component.

To establish the subjective component, a plaintiff must show that prison officials "knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Martinez*, 563 F.3d at 1089 (internal quotation omitted). To violate the Eighth Amendment, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). However, a plaintiff may establish "that a prison official subjectively knew of the substantial risk of harm by circumstantial evidence or 'from the very fact that the risk was obvious.'" *Martinez*, 563 F.3d at 1089 (quoting *Farmer*, 511 U.S. at 842). "Unlike the objective component, the symptoms displayed by the prisoner are relevant to the subjective component of deliberate indifference. The question is: 'were the symptoms such that a prison employee knew the risk to the prisoner and chose (recklessly) to disregard it?'" *Id*. (quoting *Mata*, 427 F.3d at 753).

In this case, the Court finds sufficient factual allegations in the Second Amended Complaint from which to infer that jail employees knew of and disregarded a substantial risk of harm to Plaintiff. Plaintiff alleges that he informed the jail staff of his hemophilia and need for treatment

6

of his leg injury, and they were informed by a medical alert identification tag that he wore upon admission to the jail. Further, Plaintiff alleges that his need for medical attention was obvious from the swollen condition of his leg, which was noticeable and visibly worsened during his confinement, and from his difficulty in walking. These alleged facts, if proven, might lead a reasonable fact finder to conclude that the jail staff from whom Plaintiff requested medical help, particularly those who witnessed the worsening of his condition, knew Plaintiff faced a substantial risk of harm but disregarded that risk by failing to obtain medical care for his injury. Therefore, the Second Amended Complaint adequately alleges that a constitutional violation occurred.

**B.     County Liability**

Plaintiff concedes that any liability of Sheriff Lester for unconstitutional conduct by the jail staff cannot rest on a *respondeat superior* theory, but requires proof that an official policy or custom of the county was the "moving force" behind the alleged constitutional violation. *See Monell v. Dep't Social Serv.*, 436 U.S. 658, 694 (1978); *Board of County Comm'rs v. Brown*, 520 U.S. 397, 409 (1997). To establish liability of a local government entity, a plaintiff must allege facts to demonstrate that he suffered a constitutional deprivation resulting from an established policy, a longstanding practice or custom, or the conduct or decision of a final policymaker. *See, e.g.*, *Moss v. Kopp*, 559 F.3d 1155, 1168-69 (10th Cir. 2009). Plaintiff does not identify a policy or custom of Sheriff Lester or the jail that caused the alleged denial of medical treatment. Instead, Plaintiff relies in his response brief on an alternative theory to establish county liability: inadequate training of employees where the "failure to train amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact." *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Plaintiff argues: "'In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizen's rights may rise to the level of an official

government policy for purposes of § 1983.'" *See* Pl.'s Resp. Br. [Doc. No. 45] at 8 (quoting *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011)).

Plaintiff relies on allegedly similar circumstances in *Olsen v. Layton Hills Mall*, 312 F.3d 1304 (10th Cir. 2002), in which a person diagnosed with obsessive-compulsive order (OCD) suffered panic attacks when he was wrongly arrested and taken to jail. Although the arresting officers and jail staff were informed of his disorder and his need for medication to address the panic attacks, the arrestee was denied his medication throughout the detention until he was released on bond. The court of appeals ruled that, given the frequency of OCD, the county's "scant procedures on dealing with mental illness and the prebooking officers' apparent ignorance to his requests for medication, a violation of federal rights is quite possibly a 'plainly obvious consequence' of [the county's] failure to train its prebooking officers," and might establish that the county "was deliberately indifferent in its failure to train prebooking officers on OCD." *Id* at 1320.

Similarly here, Plaintiff argues that Sheriff Lester failed to train jail staff that a person diagnosed with hemophilia – a potentially life threatening condition that was identified in this case by a medical alert tag – needs immediate medical attention for a physical injury, and this failure of training caused Plaintiff to be denied medical treatment over 13 hours, until he was released on bond. Further, Plaintiff contends the Second Amended Complaint is sufficient to satisfy Fed. R. Civ. P. 8(a), which permits notice pleading and requires only "a short and plain statement" of his claims. Plaintiff notes that "the degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context." *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (internal quotation omitted); *see also Iqbal*, 556 U.S. at 663. A "complaint must meet the minimal standard of notice pleading as articulated by the Court in *Twombly*." *Robbins*, 519 F.3d at 1249. Plaintiff contends the Second Amended Complaint

8

is sufficient to state a plausible claim that Sheriff Lester failed to provide adequate training for the jail staff, and that the lack of training caused the alleged constitutional violation to occur, based on the alleged facts that the "entire Jail staff" failed to recognize the gravity of the situation and Plaintiff's need for immediate medical attention, despite his medical alert tag and worsening condition. *See* Pl.'s Resp. Br. [Doc. No. 45] at 13.

Upon consideration of the issues, the Court finds that the Second Amended Complaint is sufficient, although barely, to state a claim of county liability based on a lack of training of the jail staff. Although, unlike OCD, hemophilia is a rare condition, it is sufficiently serious, and its consequences in case of injury are so severe, that a person with the condition wears a medical alert identification tag. The alleged facts that the jail staff confiscated Plaintiff's tag without recognizing its significance, and that none of the jailers with whom Plaintiff came into contact during his confinement recognized the severity of the situation, might lead to a reasonable conclusion that their training was deficient and that the lack of training amounted to deliberate indifference to the health or safety of jail inmates. The Second Amended Complaint alleges, and Sheriff Lester does not dispute, that he was the final policymaker with regard to jail operations and the training received by the jail staff. A failure to provide sufficient training for someone on the jail staff to recognize the gravity of a situation involving an injured inmate with hemophilia and the need for a medical assessment of the injury might reasonably support a finding of deliberate indifference to the risk of harm to a hemophilic inmate. Further, the alleged facts are minimally sufficient to suggest a causal connection between the alleged inadequate training of jail staff and the alleged violation of Plaintiff's right to medical care. Accordingly, the Court finds that the Second Amended Complaint adequately states a § 1983 claim against Sheriff Lester or the county.

**Conclusion**

Therefore, assessing the Complaint under the applicable Rule 12(b)(6) standard, the Court finds that Plaintiff adequately states a § 1983 claim against Sheriff Lester based on allegations of a failure to train jail staff with deliberate indifference to detainees' rights to constitutionally adequate medical care.

IT IS THEREFORE ORDERED that Defendant Joseph K. Lester's Motion to Dismiss Plaintiff's Second Amended Complaint [Doc. No. 37] is DENIED.

IT IS SO ORDERED this 14th day of September, 2012.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE