IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHASE GOODNIGHT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. CIV-11-691-D |
| ) | |
| JOSEPH K. LESTER, in his official capacity, ) | |
| as Sheriff of Cleveland County, Oklahoma, ) | |
| *et al*., ) | |
| ) | |
| Defendants. ) | |

**ORDER**

Before the Court are identical motions to dismiss Plaintiff's Second Amended Complaint, filed pursuant to Fed. R. Civ. P. 12(b)(6). The motions are made by Defendants Ivan Esau, Laurel Edwards, Aaron Atherton, Debra Brown, Kevin Jones, and Shawn Middleton [Doc. No. 43], Defendant Matthew Randall [Doc. No. 65], and Defendants Raymond Crum, Josh Harris and Robert Stevenson [Doc. No. 73]. Each of the movants is identified in the caption of the Second Amended Complaint as "a Deputy and/or Jailer for the Cleveland County Sheriff's Office," and they are referred to collectively in factual allegations as "jail staff," "jail personnel," or "the deputies and/or jailers." *See* Second Am. Compl. [Doc. No. 20], ¶¶ 19-21, 24-25, 27-28, 37-39, 43-46, 48. Plaintiff has timely opposed the motions with almost identical response briefs.[1] Due to the similarity of issues and arguments, the motions are taken up together.

Plaintiff brings suit under 42 U.S.C. § 1983 and state law to recover damages for injuries allegedly sustained during his arrest on the campus of the University of Oklahoma and his detention in the Cleveland County jail. As pertinent here, Plaintiff alleges he was denied treatment for a

---

[1] In briefs filed after the Court ruled on other defendants' motions for dismissal, Plaintiff relies on the Order of September 14, 2012 [Doc. No. 53] regarding the motion of Sheriff Lester.

serious medical condition that was known to, but ignored by, jail employees. Plaintiff thus claims a violation of his right as a pretrial detainee to constitutionally adequate medical care. Plaintiff has sued eleven individuals who were allegedly employed by the Cleveland County Sheriff's Office and assigned to the county jail. He seeks to impose liability for damages on each individual jailer based on the failure of "jail staff to obtain medical attention for him." *See id.* ¶¶ 25, 45.

**Standard of Decision**

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see Robbins v. Oklahoma*, 519 F. 3d 1242, 1247 (10th Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *See id.* at 679; *see also Robbins*, 519 F.3d at 1248. "In § 1983 cases, defendants often include the government agency and a number of government actors sued in their individual capacities. Therefore it is particularly important in such circumstances that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *See Robbins*, 519 F.3d at 1249-50 (emphasis in original); *see also Smith v. United States*, 561 F.3d 1090, 1104 (10th Cir. 2009). The question to be decided is "whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007) (internal quotation omitted).

**Plaintiff's Allegations** [2]

The Second Amended Complaint states that Plaintiff was arrested in the early morning hours of January 23, 2010, while walking to dormitory housing on campus. Two officers employed by the Oklahoma University Police Department (OUPD), who are individually named in the pleading, arrested Plaintiff for public intoxication and placed him in a patrol car. When putting Plaintiff into the vehicle, one of the officers allegedly slammed the car door against Plaintiff's left leg and physically injured it. Before this happened, Plaintiff had informed the police officers of a serious medical condition, hemophilia.[3] Despite their knowledge of Plaintiff's leg injury and his hemophilia, "which would require immediate medical attention, the OUPD officers ignored Plaintiff's condition and proceeded to the Cleveland County jail." *See* Second Am. Compl. [Doc. No. 20], ¶ 18.

At the jail, Plaintiff informed "the jail staff" – who are alleged to be the deputies or jailers named individually as "Defendants No. 5 through 15" – that he had been injured, he suffered from hemophilia, and he needed medical attention. *See id*. ¶ 19. However, the jail staff ignored this information, took from Plaintiff a medical alert identification tag that informed them of his hemophilia, and told Plaintiff "there was nothing they (jail staff) could do for him." *Id*. ¶ 20. During the booking process and during his confinement, Plaintiff's "left leg began to swell noticeably, which caused significant pain as well as difficulty in walking." *Id*. ¶ 22. Plaintiff was

---

[2] Pursuant to the standard of decision, the factual allegations of Plaintiff's pleading are accepted as true and stated in the light most favorable to him.

[3] Hemophilia "is a rare bleeding disorder in which the blood doesn't clot normally. If you have hemophilia, you may bleed for a longer time than others after an injury. You may also bleed inside your body (internally), especially in your knees, ankles, and elbows. This bleeding can damage your organs and tissues and may be life threatening." *See* http:/www.nhlbi.nih.gov/health/health-topics/topics/hemophilia.

held in custody without any medical attention for approximately 13 hours before being released on bail. During this time period, "the condition of his left leg worsened visibly, and walking became extremely painful." *Id*. ¶ 23. Plaintiff alleges that he repeatedly informed jail personnel of his condition, but no medical attention was provided while he was in custody.

Because of his injury and lack of medical treatment, Plaintiff alleges he required treatment during the days following his release that involved having "medication specially delivered to him," and he "experienced extreme difficulty in walking for several weeks." *Id*. ¶¶ 25-26. Plaintiff also alleges that the "medical treatments and special medication necessitated by the acts and omissions of the OUPD officers and Cleveland County jail staff . . . put Plaintiff to significant and avoidable pain, inconvenience and cost, and threatened Plaintiff's health." *Id*. ¶ 27. As stated above, Plaintiff asserts that his Fourteenth Amendment right to receive treatment of a serious medical condition while confined as a pretrial detainee was violated. He seeks damages under § 1983 from Sheriff Lester (or the county), the two OUPD officers individually, and eleven individuals employed as deputies or jailers by the Cleveland County Sheriff's Office.

As noted by the instant motions, Plaintiff does not allege the personal involvement of any particular jail employee in the events that transpired during his detention. These individuals are named in the Second Amended Complaint but identified only as "jailers and/or deputy sheriffs for the Cleveland County Sheriff's Office" who "were assigned to the jail at the direction and supervision of Defendant Sheriff Joseph Lester." *See* Second Am. Compl. [Doc. No. 20], ¶ 6. Throughout Plaintiff's pleading, these individuals are referred to collectively, and the role of a particular jailer in Plaintiff's detention or lack of medical treatment is not explained. Plaintiff states in briefs filed in opposition to the motions that he has named as defendants in the Second Amended Complaint the deputies or jailers who "were on duty in the Cleveland County Jail for at least some

portion of the thirteen hours in which Plaintiff was detained on January 23, 2010." *See* Pl.'s Resp. Br. [Doc. No. 48] at 13-14.

## Discussion

The movants contend the Second Amended Complaint fails to state a § 1983 claim against any jailer because no personal involvement in the alleged constitutional deprivation is stated, and no unconstitutional conduct by any particular defendant is alleged. The movants also contend they are entitled to qualified immunity due to Plaintiff's failure to allege that any of them violated a clearly established right.

The law is clear that a pretrial detainee is entitled under the Due Process Clause of the Fourteenth Amendment "to the degree of protection against denial of medical attention which applies to convicted inmates under the Eighth Amendment." *See Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). To establish a constitutional violation under this standard, a plaintiff must show "deliberate indifference to serious medical needs." *Id.* (internal quotation omitted); *see Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "'Deliberate indifference involves both an objective and a subjective component.'" *Johnson v. Mullin*, 422 F.3d 1184, 1187 (10th Cir. 2005) (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000).

"The objective component of the test is met if the 'harm suffered rises to a level "sufficiently serious" to be cognizable under the Cruel and Unusual Punishment Clause' of the Eighth Amendment.'" *Martinez*, 563 F.3d at 1088 (quoting *Mata v. Saiz*, 427 F.3d 745, 752-53 (10th Cir. 2005)). "[I]t is the harm claimed by the prisoner that must be sufficiently serious to satisfy the objective component, and not solely 'the symptoms presented at the time the prison employee has contact with the prisoner.'" *Id.* (quoting *Mata*, 427 F.3d at 753). "A medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so

5

obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock*, 218 F.3d at 1209 (internal quotation omitted); *see Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010).

Upon consideration of Plaintiff's pleading in ruling on Sheriff Lester's motion to dismiss, the Court has previously found that the Second Amended Complaint contains sufficient allegations to suggest that a serious medical need existed during Plaintiff's confinement in the Cleveland County jail. The Second Amended Complaint states that Plaintiff had a diagnosed medical condition, hemophilia, and a leg injury that caused swelling, significant pain, difficulty in walking, and required medical treatment. The Court adheres to this finding here. Accepting these factual allegations as true, Plaintiff might be found to have suffered a sufficiently serious harm to satisfy the objective component.

To establish the subjective component, a plaintiff must show that jail officials "knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Martinez*, 563 F.3d at 1089 (internal quotation omitted). To violate the Eighth Amendment, a jail official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). However, a plaintiff may establish "that a prison official subjectively knew of the substantial risk of harm by circumstantial evidence or 'from the very fact that the risk was obvious.'" *Martinez*, 563 F.3d at 1089 (quoting *Farmer*, 511 U.S. at 842). "Unlike the objective component, the symptoms displayed by the prisoner are relevant to the subjective component of deliberate indifference. The question is: 'were the symptoms such that a prison employee knew the risk to the prisoner and chose (recklessly) to disregard it?'" *Id.* (quoting *Mata*, 427 F.3d at 753).

In its prior ruling, the Court found sufficient factual allegations in the Second Amended Complaint from which to infer that unspecified jail employees knew of and disregarded a substantial risk of harm to Plaintiff. Plaintiff allegedly informed the jail staff of his hemophilia and the need for treatment of a leg injury; a medical alert identification tag that he wore upon admission to the jail verified his condition; and Plaintiff's alleged need for medical attention was obvious from the condition of his leg, which was noticeably swollen, visibly worsened during his confinement, and caused difficulty in walking. These facts, if proven, might lead a reasonable fact finder to conclude that the jail employees with whom Plaintiff came into contact, particularly ones who were aware of his condition and observed a noticeable injury, knew Plaintiff faced a substantial risk of harm but disregarded that risk by failing to obtain medical attention for him.

As to individual jail employees, however, the Court finds Plaintiff's allegations to be insufficient to impose personal liability on any named defendant or to overcome these individuals' defense of qualified immunity. The Supreme Court has recognized that, to state a plausible § 1983 claim, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. The court of appeals expressly addressed the sufficiency of general allegations aimed at a group of governmental actors in *Robbins*. The court of appeals found the plaintiffs' collective allegations were insufficient to withstand a Rule 12(b)(6) motion because they failed to identify the wrongful acts allegedly committed by each defendant. The court reasoned:

> Given the complaint's use of either the collective term "Defendants" or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed.

*Robbins*, 519 F.3d at 1250. Accordingly, the court of appeals held that the plaintiffs' pleading failed to satisfy both the *Twombly* plausibility requirement and the fair notice requirements of Rule 8. *See id*. at 1250-51; *see also Gray v. University of Colo. Hosp. Auth.*, 672 F.3d 909, 919 n.9 (10th Cir. 2012) (noting use of collective term "Defendants" failed to inform individuals what unconstitutional acts they allegedly committed); *Bryson v. Gonzales*, 534 F.3d 1282, 1290 (10th Cir. 2008) ("allegations that simply name the 'Defendants' generically" do not state facts about an individual defendant's conduct). The court of appeals also stressed the importance of factual allegations in a § 1983 case where qualified immunity may be asserted as an affirmative defense:

> Although we apply the same standard in evaluating dismissals in qualified immunity cases as to dismissals generally, complaints in § 1983 cases against individual government actors pose a greater likelihood of failures in notice and plausibility because they typically include complex claims against multiple defendants. The *Twombly* standard may have greater bite in these contexts, appropriately reflecting the special interest in resolving the affirmative defense of qualified immunity at the earliest stage of a litigation.

*Robbins*, 519 F.3d at 1249 (internal quotations and citations omitted); *see also VanZandt v. Oklahoma Dep't of Human Serv.*, 276 F. App'x 843, 847 (10th Cir.2008) (unpublished opinion).

Conceding a present inability to state the personal involvement of particular jail employees, Plaintiff argues that the Second Amended Complaint is nevertheless sufficient to state a plausible claim against all on-duty members of the jail staff because all could have, but did not, act to obtain medical treatment for Plaintiff's leg injury; as to some, their duty might have been "to prevent [a constitutional] violation by their co-workers." *See* Pl.'s Resp. Br. [Doc. No. 76], at 15. Plaintiff also asserts that he "should be permitted to conduct discovery to discern whether [or which of] these individual Defendants acted or failed to act with sufficient disregard for Plaintiff's rights as a pre-trial detainee." *Id*. at 11. Plaintiff argues that the discovery process is intended to provide factual information "necessary to narrow the issues and properly identify the culpability of individual

8

defendants" and that "[i]t will strengthen the allegations against some and may exonerate others." *Id*. at 16, 18.

The Court is unpersuaded by these arguments. Plaintiff apparently has sued every county jail employee or deputy who was on duty at any time during Plaintiff's confinement, regardless whether the employee had any contact with Plaintiff or any responsibility for the care of inmates. Plaintiff's general, collective allegations against this group of employees simply fails to state that any individual defendant acted with the subjective knowledge of, and disregard for, a serious medical need.[4] Plaintiff's arguments regarding discovery are particularly inappropriate in the context of a claim to which a qualified immunity defense applies; the purpose of the defense is to protect individual government employees from litigation and discovery. In *Iqbal*, the Supreme Court expressly rejected an argument that careful case management involving limited discovery could be utilized to preserve qualified immunity while fleshing out a potential claim: "The basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation, including avoidance of disruptive discovery." *Iqbal*, 556 U.S. at 685 (internal quotation omitted). A plaintiff whose complaint is deficient "is not entitled to discovery." *Id* at 686. In this case, the Court finds that the Second Amended Complaint fails to sufficiently state a § 1983 claim against any individual jailer or deputy.

---

[4] Particularly in this case involving a rare medical condition, the gravity of Plaintiff's alleged situation may easily have escaped individuals without medical training and without proper jail training, as alleged elsewhere in the Second Amended Complaint to support a claim against Sheriff Lester.

**Conclusion**

Because the Second Amended Complaint fails to state a § 1983 claim against the individual defendants employed by the county who have moved for dismissal, these defendants are entitled to the dismissal without prejudice of the Second Amended Complaint.[5]

IT IS THEREFORE ORDERED that Defendants Esau, Edwards, Atherton, Brown, Jones and Middleton's Motion to Dismiss Plaintiff's Second Amended Complaint [Doc. No. 43], Defendant Matthew Randall's Motion to Dismiss Plaintiff's Second Amended Complaint [Doc. No. 65], and Defendants Raymond Crum, Josh Harris and Robert Stevenson's Motion to Dismiss Plaintiff's Second Amended Complaint [Doc. No. 73] are GRANTED, as set forth herein.

IT IS SO ORDERED this 6th day of December, 2012.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE

---

[5] As with Plaintiff's response to the motions for dismissal of police officers who were also named as defendants, Plaintiff does not request leave to amend his pleading if the Court finds the Second Amended Complaint fails to state a claim. However, because the case will go forward as to other defendants, the dismissal will be without prejudice to a future request for leave to amend, if the request is made within the deadline for amended pleadings to be established at the initial scheduling conference.